ROSALIE FARLEY v. WILLIAM E. PEEBLES ET AL.

FILED FEBRUARY 16, 1897.    No. 6996.

1. Witnesses: PRIVILEGED COMMUNICATIONS: ATTORNEYS.  Generally, in order to bring communications made to a lawyer within the privilege accorded by the common law and declared by the statute, it must be shown that the relationship of attorney and client existed at the time the communications were made. While this rule has its exception in the fact that communications properly made in negotiating for the employment of an attorney are likewise privileged, still neither the rule nor the exception, neither the letter nor the spirit of the common law or of the statute, extends the privilege to communications voluntarily made to a lawyer after he has informed the person making them that he will not and cannot accept the employment to which the communications relate.

2. Conspiracy: EVIDENCE: OVERT ACTS.  A conspiracy, like other facts, may be proved by circumstantial evidence, and one means of proof is by showing overt acts of the individuals charged with conspiring. From the fact that different persons at different times by their acts pursue the same object, the jury may, in connection with other facts, infer the existence of a conspiracy to effect that object.

3. ——: ——: ADMISSIONS.  In order to justify the admission in evidence, for the purpose of establishing the conspiracy, of such acts of individuals it is not necessary to first prove by other evidence the existence of the conspiracy.

4. ——: ——: DECLARATIONS.  Declarations made in pursuance of the object are likewise admissible, but to be so they must not be merely narrative of past occurrences or statements of future purposes; they must tend so directly toward the accomplishment

of the alleged common object as to constitute a part of the *res gestæ.*

5. ——: ——: ——. Evidence of such acts or declarations may have a twofold purpose: First, the proof of the existence of the conspiracy; second, the conspiracy having been proved, to charge each member thereof with the consequence of such acts or declarations. For the first purpose the evidence is admissible generally as against all. For the second purpose it cannot be considered against those not participating in the acts or declarations, unless from all the evidence the existence of the conspiracy has been proved.

ERROR from the district court of Cuming county. Tried below before NORRIS, J. *Reversed.*

The facts and issues are stated by the commissioner.

*Breckenridge & Breckenridge* and *C. C. McNish,* for plaintiff in error:

It was error to exclude proof not only of acts and declarations resulting in plaintiff's damage, but of facts tending to show the unlawful combination itself, as against any and all defendants not shown to be present and directly connected with the particular declaration or fact. (*Nudd v. Burrows,* 91 U. S., 426; *Spies v. People,* 122 Ill., 1; *United States v. Gooding,* 12 Wheat. [U. S.], 469; *Ochs v. People,* 124 Ill., 399; *St. Paul Distilling Co. v. Pratt,* 45 Minn., 215; *Regina v. Duffield,* 5 Cox C. C. [Eng.], 404; *Mapstrick v. Ramge,* 9 Neb., 390.)

The testimony of the witness Sloan was not properly excluded as privileged communications. (*Home Fire Ins. Co. v. Berg,* 46 Neb., 600; *Henry v. Nubert,* 35 S. W. Rep. [Tenn.], 444; *In re Turner,* 31 Atl. Rep. [Pa.], 867; *Romberg v. Hughes,* 18 Neb., 579; *Clay v. Tyson,* 19 Neb., 530; *George v. Silva,* 68 Cal., 272; *Thiesen v. Dayton,* 82 Ia., 74; *Plano Mfg. Co. v. Frawley,* 68 Wis., 577.)

*Guy T. Graves* and *Jay & Beck, contra.*

References: *Lawson v. State,* 32 Ark., 220; *Nelson v. Becker,* 32 Neb., 99; *People v. Barker,* 27 N. W. Rep.

[Mich.], 539; *Clay v. Tyson*, 19 Neb., 530; *Hapgood Plow Co. v. Martin*, 16 Neb., 27; *Rupert v. Penner*, 35 Neb., 587; *Omaha S. R. Co. v. Beeson*, 36 Neb., 361; *United States v. Cole*, 5 McL. [U. S.], 513.

Irvine, C.

Rosalie Farley brought this action against William E. Peebles, A. C. Abbott, D. N. Wheeler, George F. Chittenden, and Harry F. Swanson, alleging in her petition that she is a member of the Omaha tribe of Indians; that there was made to her by said tribe, on the 1st of May, 1892, a lease of 21,632.18 acres of the unallotted tribal lands of said Omaha Indians for a period of five years, or until the allotment of the lands leased; that said lease was made for grazing purposes, rent being reserved at twenty-five cents per acre per year; that said lease was duly approved by the commissioner of Indian affairs and the secretary of the interior; and that plaintiff took possession under said lease of the lands therein described; that the lands were of great value to her for grazing purposes, and that she derived large profits therefrom; that in 1892 the defendants conspired together to interfere with her rights and to destroy her business of grazing and pasturing cattle upon said lands, and of renting said lands to owners of cattle for grazing purposes; and pursuant to said conspiracy the defendants caused to be printed and circulated among the customers of plaintiff a notice purporting to be signed by the members of the council of the Omaha tribe, which notice was to the effect that plaintiff's lease had expired, and that any cattle or stock found on said lands after May 1, 1893, would be taken up for trespass and held for damages. She further alleged that said notice was not in fact issued by the Omaha tribe; that many of the council knew nothing thereof and never signed or authorized the signing thereof, all to the defendants' knowledge; that the sole purpose of issuing said notice was to prevent plaintiff from securing cattle to graze on said lands; that in fur-

ther pursuance of said conspiracy the defendants caused said notice, with comment, to be published in a newspaper in Thurston county, which newspaper was published by the defendant Swanson; and that said newspaper circulated largely among plaintiff's patrons. The plaintiff further averred that in pursuance of said conspiracy, and for the purpose of ruining plaintiff's business, the defendants procured the institution in the circuit court of the United States of an action in equity in the name of certain members of the council of the Omaha tribe, appearing for themselves and other members of the tribe, the object whereof was to obtain a decree, contrary to the facts, adjudging the plaintiff's lease to be canceled, and that said action was begun for the purpose of slandering plaintiff's title; that when said tribe learned of the commencement of said action it repudiated the same; that several of the ostensible plaintiffs to said action did not authorize the suit to be brought and did not sign or swear to the bill, although said bill had attached the jurat of one of the defendants, a notary public for Thurston county, indicating that all said plaintiffs had made oath thereto. Plaintiff further alleged that by reason of such acts certain persons who had executory contracts with the plaintiff for the pasturing of cattle had been induced to cancel the same, and that other persons had been prevented from entering into contracts with her, all to her damage in the sum of $8,000. The answer, while admitting certain allegations of minor importance, denied most of the allegations contained in the petition, including all charges of conspiracy and wrongful acts. A trial to a jury resulted in a verdict, followed by judgment, for defendants. The plaintiff prosecutes error.

In addition to the foregoing statement, it may be well to say that the Omahas are a tribe of Indians having their residence chiefly in Thurston county. They were formerly in possession of a reservation, but by virtue of certain treaties and acts of congress a portion of their

land was sold for their benefit, and a large portion of the remainder was allotted in severalty to members of the tribe. There remained unallotted a considerable body of land, subject to lease for grazing purposes under certain supervision by the Indian bureau, for the benefit of the tribe. While the members of the tribe have adopted the habits of civilized life, a council composed of twelve members is retained and exercises a certain control over property still enjoyed by the members of the tribe in common. It is to this communal property that this suit relates. These last facts are stated partly from the evidence, and partly as derived from the treaties and acts of congress and as matters of public notoriety, of which the court can properly take notice.

In view of these facts it cannot be questioned that the plaintiff stated a cause of action. She alleged, more in detail than we have stated, a valid lease to herself of a large tract of land, the equitable ownership of which, if not the legal title, rests in the tribe of which she is a member; a conspiracy among persons outside the tribe to deprive her of the beneficial enjoyment of that lease; this conspiracy carried into effect by the publication of a false warning purporting to be, but not, in fact, signed by those having control of the tribal affairs, whereby strangers would be induced to avoid contracting with plaintiff on the faith of her lease; the institution of an action in the name of the Indians, but without their authority, to cancel her lease; and damages as the result of such acts.

There are many assignments of error, but we address our attention to only two groups, which present, as we think, the two questions of most importance developed by the trial. The other assignments relate either to matters of minor importance, to matters probably accidental to the first trial and not likely to recur, or to questions not properly preserved by exceptions or in the motion for a new trial.

Thomas L. Sloan was called as a witness for the plaint-

iff. Mr. Sloan is a member of the bar of the state, practicing in Thurston county, and is himself an Omaha Indian. It was sought to show by Sloan that Chittenden, one of the defendants, had approached him, seeking to retain him as an attorney in business against Mrs. Farley; that Sloan had informed him that he was generally retained on behalf of Mrs. Farley, and that he therefore could not accept a retainer against her; that thereafter Chittenden had made certain statements to him to the effect that Wheeler & Chittenden, who were partners in the real estate business, desired to secure Sloan's services to assist them in obtaining control of the land in controversy as against Mrs. Farley, and to use his influence with the tribe for the same purpose. Still further, that at a later time, and after information as to Sloan's retainer on behalf of Mrs. Farley, the defendant Peebles had joined the defendants Wheeler & Chittenden in a further effort and further statements to the same effect, and that an offer had been made Sloan of a large retainer if he would accept such employment, and also an offer to indemnify him against any damages which Mrs. Farley might recover on account of the breach of his contract with her. The court's rulings on this matter were not very consistent. The offers were made a number of times. A portion of the evidence was admitted. Other portions were excluded, but the result of it all was an order striking the whole of Sloan's testimony from the record. It is probable that some portions were incompetent and should have been excluded, but there can be no doubt that a considerable portion of that excluded or stricken out should have been admitted. The objection was on the ground that it was sought to elicit from the witness privileged communications made to the witness as an attorney at law. Our statute provides (Code of Civil Procedure, sec. 333): "No practicing attorney, counsellor, * * * shall be allowed, in giving testimony, to disclose any confidential communication properly entrusted to him in his professional capacity, and necessary

and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline." So far as we have quoted, the statute is merely declaratory of the common law. The portion not quoted relates merely to communications made to physicians, surgeons, priests, and ministers of the gospel. There is no doubt that generally, in order to surround such a communication with the protection of either the common law or the statute, the relationship of attorney and client must exist at the time the communication is made. (*Romberg v. Hughes*, 18 Neb., 579.) Nor do we have any doubt, on the other hand, that to enforce the spirit of the statute it is necessary and proper to hold that the protection extends also to communications made to an attorney in negotiating to employ him as such. (*Nelson v. Becker*, 32 Neb., 99.) But the offer here made was not of that character. It was to show communications made after the defendants had been informed that no employment would or could be accepted. Such communications are neither within the letter nor the spirit of the statute or of the common law, and are not privileged. (*Clay v. Tyson*, 19 Neb., 530; *Setzar v. Wilson*, 4 Ired. [N. Car.], 501.) Such portions, at least, of the evidence sought to be elicited from Sloan as were not incompetent under the foregoing statement should have been admitted, or should not have been stricken out.

The other subject which we deem it proper to consider is presented by numerous rulings upon the evidence, and by at least nine assignments of error. These we shall not consider in detail, although a detailed consideration might disclose that under the particular questions asked and offers of proof made some of the rulings may have been correct. Still, we are convinced that most of them were wrong, and that the court proceeded on an erroneous view of the law. The plaintiff, without first establishing by direct or by circumstantial evidence of a general character the existence of the conspiracy complained of, sought to show various acts of one or another

of the defendants, mostly by way of conversations with members of the council of the Omaha tribe. In a general way, it may be said that these were communications seeking to ascertain the views of the Indians with regard to the Farley lease; seeking to induce individual members of the tribe to exert themselves to have the land allotted in severalty; seeking to induce them to institute an action for the purpose of annulling the lease; also communications with reference to the issuing of the notice or circular complained of in the petition, and facts with regard to the institution of the action in the federal court. It was not offered to show, in any instance, that all the defendants took part or were present at the time of the acts sought to be proved. In each instance the court admitted the evidence only as against the defendants present at the time, and at the close of the trial the court instructed the jury that before it could consider any admission, declaration, or act of any of the defendants as to the alleged conspiracy, it must first find that there was a conspiracy unlawfully entered into by the defendants to injure Rosalie Farley. As an abstract statement of law, when properly understood, this instruction would be free from error; but coming, as it did, after a multitude of rulings on the evidence, excluding evidence of all acts or declarations as against those not present, it served to impress upon the jury as a rule of law that the conspiracy must be established otherwise than by acts or declarations of any portion of the defendants, and that such acts could not be considered for any purpose without preliminary evidence of another character as to the existence of the conspiracy. This, we think, was wrong. A text-writer on evidence, whose work has attained such a standing that it is in itself almost authoritative, says on this subject: "The evidence in proof of a conspiracy will generally, from the nature of the case, be circumstantial. Though the common design is the essence of the charge, it is not necessary to prove that the defendants came together and actually agreed in terms to have

that design, and to pursue it by common means. If it be proved that the defendants pursued by their acts the same object, often by the same means, one performing one part and another another part of the same, so as to complete it, with a view to the attainment of that same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object." (3 Greenleaf, Evidence, sec. 93.) So, also, another writer has said: "A conspiracy is proved either expressly or by the proof of facts from which the jury may infer it. It is seldom proved expressly; nor can a case easily be imagined in which that is likely to occur, unless where one of the persons implicated in the conspiracy consents to be examined as a witness for the prosecution. In nearly all cases, therefore, the conspiracy is proved by circumstantial evidence, namely, by proof of facts from which the jury may fairly imply it. It is usual to begin by showing that the defendants all knew each other, and that a certain degree of intimacy existed between them, so as to show that their conspiring together is not improbable; and if to this can be added evidence of any consultations or private meetings between them, there is then a strong foundation for the evidence to be subsequently given, namely, of the overt acts of each of the defendants in furtherance of the common design. But although the proof above mentioned is desirable, because it satisfies the jury as you proceed and they are better able to apply the evidence of the overt acts when it is afterwards given, yet it is not essentially necessary, as the jury may imply the conspiracy of all from the overt acts of each. * * * Perhaps the safer rule to lay down upon the subject would be that, wherever the writings or words of any of the parties charged with or implicated in a conspiracy can be considered in the nature of an act done in furtherance of the common design, it is admissible in evidence, not only as against the party himself, but as proof of an act from which (*inter alia*) the jury may infer the conspiracy itself." (Archbold, Crimi-

nal Practice & Pleading, 619*, 621*.)   These views are in accordance with numerous adjudicated cases, among them *Regina v. Murphy*, 8 C. & P. [Eng.], 297; *Clune v. United States*, 159 U. S., 590; *United States v. Cole*, 5 McL. [U. S. C. C.], 513; *United States v. Doyle*, 6 Sawyer [U. S. C. C.], 612; *Spies v. People*, 122 Ill., 1; *Ochs v. People*, 124 Ill., 399; *Jones v. Baker*, 7 Cow. [N. Y.], 445.   The last cited case has been referred to with approval by this court in *Mapstrick v. Ramge*, 9 Neb., 390.   We think, upon reflection, one must be convinced that such evidence should be admitted in the absence of a positive rule of law to the contrary.   The ordinary rules of evidence require it.   As stated in almost every case upon the subject it is impossible from the very nature of the case to obtain direct credible evidence of an actual meeting together of the conspirators and an express agreement among them to pursue the common object.   The fact that there exists among them a concert of minds must in nearly all cases be established by circumstances, and among such circumstances there can be none of more logically convincing force than the fact that one person at one time, another person at another time, and a third person at a third time have been working along the same lines and by the same general methods to effect the same object.   In admitting such evidence the court should not, and it was not in this case asked to, infringe against the rule excluding hearsay testimony, or the rule restricting the effect of admissions to the parties making them.   In the language of the supreme court of the United States, acts or declarations are in such cases admissible only "in reference to the common object and forming a part of the *res gestæ*." (*American Fur Co. v. United States*, 2 Pet. [U. S.], 358.) What is merely narrative of a past occurrence, or what is merely expressive of a future purpose, would not generally be so admissible; but an act performed, a declaration made, a writing made or delivered, as a part of the matter in dispute, that is, in itself tending to advance the common purpose or object of the alleged conspiracy, is

neither hearsay nor merely the admission of one of the parties. It is an overt act in pursuance of the object. From such overt acts of each of the alleged conspirators the jury may, together with other evidence, infer the existence of the conspiracy itself. We are aware that it is the established rule that the acts or declarations of one of the alleged conspirators are not admissible as against the others unless the conspiracy itself be established, in which case the act or declaration of one becomes that of all; and we are aware, also, that it has sometimes been stated that such acts or declarations are not admissible in evidence until the conspiracy itself is first *prima facie* established. It has always been said, however, in connection with this, as in other cases, that the order of proof must rest within the discretion of the trial court. If an act or declaration is of such a character as to tend to establish the existence of the conspiracy, then it should not be excluded merely because it is also of such a character as to bind all the conspirators by its consequences in the event of the establishment of the conspiracy. In short, we conceive the rule to be that a conspiracy may be established by circumstantial evidence, including overt acts in pursuance thereof by individual conspirators, the others not being present or participating in such acts; but that such individual acts are not admissible when of the character of subsequent admissions, and they should not ordinarily be admitted when not so directly tending to the accomplishment of the common purpose, as also to tend by that fact toward proving the existence of the conspiracy, unless the existence of such conspiracy be first *prima facie* proved. It is, of course, proper in instructing the jury, when such a method of proof has been resorted to, to make it clear that the proof of such acts or declarations has a twofold purpose: In the first place, to establish the existence of the conspiracy, and in the second place, when such conspiracy has been established, to charge each person proved to be a party to it with all the consequences of

such acts or declarations. For the purpose of inquiring whether a conspiracy has been proved, such acts or declarations should be considered in connection with all the defendants; but unless by evidence connecting a particular defendant directly with the conspiracy he has been proved a party thereto, such acts or declarations are not to be considered for the purpose of charging him with their consequences.

REVERSED AND REMANDED.