WILLIAM H. PATTON ET AL., APPELLEES, V. MAX RAPP ET AL., APPELLANTS.

275 N. W. 315

FILED SEPTEMBER 24, 1937. No. 29974.

*Gray & Brumbaugh* and *Fradenburg, Webb, Beber, Klutznick & Kelley,* for appellants.

*Merrow & Murphy* and *O'Sullivan & Southard*, contra.

Heard before GOSS, C. J., ROSE, GOOD and CARTER, JJ., and SPEAR and KROGER, District Judges.

SPEAR, District Judge.

Action for alleged fraud and conspiracy to defraud, brought by William H. Patton and Blanche Patton, husband and wife, plaintiffs and appellees, against Max Rapp and Elsie Rapp, husband and wife, the Eagle Jewelry Company, and Joe Ban, defendants and appellants.

Plaintiffs' petition alleges that they were, on April 24, 1933, the owners of certain lots in the city of Omaha subject to a mortgage of $1,626 owned by the defendant Elsie Rapp; that the defendants Rapp at said time purchased the property and that the consideration therefor was cancelation of the mortgage and a perfect diamond weighing close to four carats. Plaintiffs say that Max Rapp induced them to go to the defendant Joe Ban, owner of the Eagle Jewelry Company, to have the diamond appraised, after Rapp had falsely told him that the stone was worth $3,000, and that Rapp and Ban conspired together to defraud plaintiffs. In furtherance of this scheme to defraud, plaintiffs claim that Ban appraised the diamond at $3,000, but that in truth it was worth only about $875, and that both Rapp and Ban knew this fact. Plaintiffs asked for damages.

Defendants answers are quite elaborate, but they really constitute a denial of the allegations in plaintiffs' petition.

A trial was had to a jury and the jury returned a verdict against all of the defendants in the sum of $2,396.73. Defendants each appeal. A great many assignments of error are made by defendants and many propositions of law are advanced by the respective parties. However, lack of space makes it imperative that we rather loosely group these contentions and discuss them generally.

Mr. Patton was 57 years old at the time of the trial and quite deaf. Mrs. Patton was 40. Patton is a blacksmith and automobile repair-man, and had done work for Mr. Rapp since 1915. In 1932 Mrs. Rapp had a mortgage of

$1,626 against the premises and was threatening foreclosure, so Pattons gave a deed to Mrs. Rapp with an option to redeem same within a year. Rapp, on the theory that he would sell the property, induced the Pattons to give him the option, that is, the instrument evidencing same, and refused to return same. Rapp then tried to trade the Pattons other properties for their rights under the option. Early in 1933 he began a campaign to trade the diamond for plaintiffs' option. After some negotiations the deal was consummated on April 24, 1933. Boiled down to essentials, the position of plaintiffs is that Rapp said that this was a fine blue white diamond worth $3,000, when in fact he knew it was worth only $800, thus deceiving plaintiffs, and that, in addition thereto, Rapp conspired with Ban, who also falsely and knowingly deceived plaintiffs as to the value of the jewel. Rapp's position, in short, is that he did not make these statements, and, in fact, told the Pattons that it was worth only $800; also, that there was no scheme to defraud between him and Ban. Ban's position is that there was no conspiracy between him and Rapp and that he gave his honest opinion that the stone was worth $3,000.

Defendants complain that the trial court erred in permitting plaintiff Blanche Patton to testify that she had attended school only through the first year in high school, and in permitting Patton to testify that he went through the seventh grade, when there is no allegation in their petition that either was illiterate. This is not error. The evidence was not offered upon the theory of illiteracy, but to show that plaintiffs were not of the same mental stature as Rapp and Ban. As such it was admissible under the general issues.

Defendants contend that the first paragraph of instruction No. 1 is erroneous. It is as follows:

"Plaintiffs bring this action to recover damages for alleged false representations as to the value of a diamond ring alleged to be a part of the consideration of the sale of a lot described in the evidence, the balance of the con-

sideration being $1,626 represented by a mortgage upon the premises, and plaintiffs allege that defendants Max and Elsie Rapp represented that said diamond was a perfect and flawless blue diamond, worth $3,000 and weighing from three and one-half to four carats."

The court then goes on to tell of the contentions of fraud. Defendants seem to contend that the deed had been given long before, and that the deal in question was over the option to repurchase, so that therefore the instruction is not proper. We think that there is no error in the instruction. The deal involved plaintiffs' rights in the land, and whether the "sale" was made when the deed was delivered, or over a year later when the repurchase option was returned, is immaterial as far as the jury are concerned. The question for the jury was as to the fraud, and the court endeavored to confine the case to that issue, without going into technicalities as to the legal effect of the deed and option.

Most of defendants' other specifications of error may be grouped in the claim that there is not sufficient evidence of fraud and conspiracy and that therefore the court should have directed a verdict for defendants. Counsel for the Rapps both in their brief and in oral argument before this court complained of plaintiffs' attempts to show the value of the premises, but in the same breath argued that plaintiffs had no substantial equity in the land in any event. In any event, after carefully going over the record we find no error in the rulings of the court in this regard.

There are a few fundamental facts about which there can be little dispute, to wit: Rapp wanted the plaintiffs' premises badly enough to make quite an effort to get them; that the diamond was worth about $875 instead of $3,000 and that Rapp knew that the ring was only worth about $800 at the time of the transaction. However, Rapp says that the plaintiffs knew that the stone was worth only $800, and that this is evidenced by a letter dictated by Rapp and signed by the Pattons at the time of the transaction, in which they said that they had had the diamond ring appraised and that they received it at a value of $800. The

Pattons claim that they signed this without knowing it, or at least they did not know what it contained. There is also some cross-examination of Mrs. Patton which indicates that in a deposition, and at a former trial of this case, she thought at the time of the trade that the diamond was worth only about $1,000. Too, upon direct examination in the case at bar she did not claim that she was deceived as to value. She seemed to regard the signed appraisal as a guarantee rather than a representation, for we find her going back to Rapp's office and insisting upon having personal possession of the appraisal. In any event, Mr. Patton says that he was deceived and misled by Rapp's statements and by Ban's appraisal. Some unexplained things have occurred in this transaction. Why did Rapp stand by and let Ban make a written appraisal for Patton's benefit wherein the ring was valued at $3,000, when he knew it was only worth $800, and that he had recently paid $800 for it? Why did he then get the Pattons to sign a letter stating that they were taking it at a valuation of $800? On the other hand, why did the Pattons sign this letter, if they thought it worth $3,000? This is a case wherein the jury and the trial judge heard the evidence, saw the witnesses, observed their demeanor and the manner in which they answered the questions. The district court found for plaintiffs, and while the evidence is conflicting upon perhaps most of the essential propositions, we feel that this is a case where the verdict of the jury should not be disturbed. Reasonable minds could have drawn different conclusions from the evidence, and we feel that the trial judge did not err in refusing to dismiss the case at the conclusion of the testimony.

Defendant Ban in a separate brief contends that there is no evidence involving him in any conspiracy to defraud the Pattons. Patton says that Ban was Rapp's choice, Rapp says that Ban was Patton's choice, and Ban says that he knew neither Patton nor Rapp. There is no evidence of meetings, acquaintance, or telephone conversations between Rapp and Ban. In fact, there is no direct evidence

of any kind to prove a conspiracy. Is there sufficient circumstantial evidence? The jury said that there was. Is that verdict sustained by sufficient evidence as against the defendant Ban? The alleged circumstances relied upon by the plaintiffs are in the main that Ban was a pawnbroker and jeweler of many years of experience; that the diamond was valued by Ban at $3,000, when he knew it was worth only $800 to $900; that this appraisement conformed exactly with the value fixed by Rapp in his statements to the Pattons; that Ban told them that it was what was called a perfect stone, when it was not; and that even now Ban claims that the ring is worth $3,000. The principal contentions of Ban, as we view them, are sought to be supported by *Emerson v. Citizens State Bank*, 125 Neb. 632, 251 N. W. 285, *Harvey v. Harvey*, 75 Neb. 557, 106 N. W. 660, and *Reed v. Occidental Bldg. & Loan Ass'n*, 122 Neb. 817, 241 N. W. 769. We do not find these cases applicable. In the *Emerson* case this court said: "There is no evidence that any officer of the bank had any knowledge or information of anything approaching a confidential relationship between plaintiff and Munger (Munger was a party to the suit)." In the *Harvey* case no facts were shown to connect William H. Harvey with the tort, but the court held that he should have moved separately for a directed verdict. In the *Reed* case the court held that no damage was alleged and therefore the case was properly dismissed. We think the case of *Farley v. Peebles*, 50 Neb. 723, 70 N. W. 231, is controlling. In that case this court quoted from a textwriter in part as follows: "Perhaps the safer rule to lay down upon the subject would be that, wherever the writings or words of any of the parties charged with or implicated in a conspiracy can be considered in the nature of an act done in furtherance of the common design, it is admissible in evidence." See, also, *Talich v. Marvel*, 115 Neb. 255, 212 N. W. 540. So, in the case at bar there is evidence that both Rapp and Ban placed a valuation of $3,000 on the diamond, when each knew that it was worth only $800. Although they claim that they were not acquainted, this is

competent evidence to establish a conspiracy, if believed by the jury. Ban acted in a confidential, professional capacity as to Patton. He must have known that some kind of a deal was pending between Patton and Rapp, and that the valuation of the diamond was of the utmost importance. Under these circumstances this court will not set aside the verdict of the jury.

The defendants in conclusion complain of improper conduct in the argument of plaintiffs' counsel. The record discloses the situation so common in jury cases, especially if the judge leaves the bench during arguments of counsel. Counsel for one side is alert for the slightest real or imagined misconduct and makes objection thereto. Counsel for the opposing side promptly seizes upon this opportunity to warn the jury that the other counsel is a base deceiver trying to keep evidence from the jury. In the instant case each attorney, in his own way, made the most of a situation which meant nothing to the jury as far as the facts were concerned. It seems that one side read from the petition, and thereupon the other side argued that the petition was a "letter" to the court. Objections and argument followed, but we see no prejudicial error in the statements of counsel or the rulings of the court thereon.

The judgment of the district court is right and is

AFFIRMED.