## McGREDE v. REMBERT NAT. BANK et al.
### No. 5673.

Court of Civil Appeals of Texas. Texarkana.

Jan. 30, 1941.

Rehearing Denied Feb. 6, 1941.

Hurst, Leak & Burke, of Longview, for appellant.

Lacy & Price and Taylor & Storey, all of Longview, for appellees.

WILLIAMS, Justice.

Appellant, Mrs. Gladys McGrede, plaintiff below, claims that two days prior to the death of J. G. McGrede he gave her the contents of his safety deposit lock box in the Rembert National Bank of Longview. He as such lessee was furnished a key to same. The bank retained the pass or master key, the joint use of which with the one furnished lessee was necessary to unlock and enter the box. It is without dispute that the bank under its rules would not permit a person other than the lessee to open or unlock the box without a written authorization to the bank from the lessee. It is further without dispute that deceased was familiar with this requirement or rule.

In support of her claim of a symbolic or constructive gift, causa mortis, she alleged: "That on June 28, 1937, the said J. G. McGrede delivered to plaintiff the keys to said box by handing his purse which contained said keys to John Sly and at said time instructed him to deliver same to plaintiff, and further stated at said time that he (deceased) was giving to plaintiff the contents * * * that said keys and purse were thereafter delivered by the said Sly to plaintiff and that she accepted and received said keys from said J. G. McGrede in the manner as alleged as a gift of the keys and the contents of said box."

Asserting title and right of possession, she sued the bank. Its position in this litigation is that of a stakeholder. Appellees, the executors of the estate of J. G. McGrede, being three of his children, intervened and answered with a general demurrer and denial. They further pleaded that on date of the purported gift deceased was up in years, then suffering with deadly bodily ailments, and of unsound mind. They further detailed acts and conduct of appellant which, stripped of logomachy, charged appellant with fraud from the inception of her association with deceased, covering a period from 1932 until his death.

Deceased, a man of considerable means and possessing valuable oil-producing properties, after the death of his first wife, married plaintiff in March, 1932. He was then a man with grown children and grandchildren—she a young woman. This marriage, after one temporary separation, finally terminated with a divorce decree entered October 14, 1932. At some date not shown, subsequent to the divorce decree and prior to 1936, plaintiff and deceased began to associate again, which continued until his death. She acted as his housekeeper and chauffeur, and to some extent assisted him in looking after his property. Deceased paid her $100 per month for this service. After they resumed their association as above indicated, deceased gave her one or two automobiles, a residence in Longview, an annuity insurance policy between the values of $2,000 and $3,000 at the time of his death, and either gave or advanced to her other sums of money besides that for

salary. In December, 1936, deceased executed a will, duly probated, in which he willed all his property to his grandchildren, having theretofore settled with his children in a partition agreement.

For two or three years prior to his death, deceased suffered from chronic Bright's disease, "having a combination of cardio-vascular condition and cardio-renal of heart and kidneys." During this period he had been treated by medical doctors, and also by Dr. Shaw, a chiropractor, in the latter's office in Longview. Early on the morning of June 28, 1937, the date of the purported gift, deceased was driven by John Sly, his servant for many years, from his temporary home at Cason, Texas, to Dr. Shaw's office for treatment. After receiving treatment by Dr. Kennedy, a chiropractor in the office, Sly, assisted by Mrs. Shaw and appellant, removed deceased that afternoon to a tourist home, and thence to a hospital where he died on July 1, 1937. From the description of deceased's weakened condition and suffering, and from the attributed statements made by deceased while in Shaw's office, deceased was conscious of his approaching death.

· Mrs. Shaw testified that while she, Sly, and deceased were present in Dr. Shaw's office, "Mr. McGrede took his pocketbook out of his purse,—I mean out of his pocket —and he felt in there to see if there was a key, and he handed it to John, he said: 'John, take this pocketbook and this bank key to Gladys and give it to her'; then he turned around to me and he said, 'She will have enough to take care of her the rest of her life.'" This witness further testified that the deceased was calling for plaintiff and word was sent to her to come to the hospital. According to plaintiff's testimony, she later arrived at Dr. Shaw's office where she met Sly in an outer room and he then handed to her the deceased's purse containing the key to his lock box. Dr. Kennedy testified that he heard deceased ask her (Gladys) later if she had the pocketbook, if John gave her the pocketbook, and she replied, "Yes, I have it."

It is to be observed that plaintiff both by her pleadings and above testimony, grounded the gift to her by the alleged act of deceased delivering the purse and key to Sly with instructions to give to plaintiff, coupled with the alleged statement, "She will have enough to take care of her the rest of her life." She had possession of the key at the

trial, and claimed to have received same at the time and in the manner above stated. Other evidence is to the effect that she had possession of the key on several occasions at her home prior to deceased's death. Plaintiff refused to permit the box to be opened, and this record does not disclose the character, value or extent of its contents, other than she alleged its value to be not less than $5,000. Other witnesses for plaintiff testified to alleged statements of deceased that he had provided for Gladys; that he was going to provide for her; that he intended to provide for her; that his children had plenty and he had, or was going to make a will and leave his estate to his grandchildren, except the contents of his lock box; that "I am going to leave her the keys and the box"; that his attorneys had advised him to do this, "so there could be no contest." Evidence to be discussed later herein controverted above alleged statements. Sly denied that he gave the purse or keys to plaintiff. He denied that deceased instructed him to deliver same to plaintiff. Sly testified that this purse was in deceased's clothes in the chiropractor's office after he had undressed deceased preparatory to the treatment on June 28, 1937. The jury answered "No" to issue No. 3 reading: "Do you find from a preponderance of the evidence that J. G. McGrede instructed John Sly to deliver the pocketbook and keys to Gladys McGrede?"

Likewise the jury answered "No" to issue No. 4 reading: "Do you find from a preponderance of the evidence that J. G. McGrede did at the time he delivered his pocketbook and keys to John Sly (if you have so found) thereby give to Mrs. Gladys McGrede the contents of the lock box in the Rembert National Bank?"

The jury found that deceased was not of unsound mind. Upon above findings and others not necessary to detail, the court denied plaintiff relief prayed for, and awarded appellees title.

Appellees, in support of their claim that the gift had not been made and that she was making a fictitious claim, introduced in evidence the cross-action of deceased in the divorce suit wherein he had alleged that upon their first separation he had paid her certain sums of money in full settlement of any property rights; that she had boasted of the large sum of money she expected to obtain from deceased; had admitted to him her association with other men while

married to him; had complained that he was too old for her, and had married him with a fixed purpose of getting his money. Love letters written by her to another man in April, 1932, were introduced. A great mass of testimony dealt with the divorce controversy; her association with deceased after the divorce; protest of his children; his gifts to her of a home, automobiles, life insurance and money; her suit for a money judgment in the divorce action; her possession of his keys to the Post Office and to the lock box in question; her purported influence over him; and his physical condition, and purported senility. His will which purports to bequeath to his grandchildren all his property, and his reasons for executing same as testified to by Angus Wynne, his attorney, were placed in evidence.

Plaintiff objected to introduction of the will; the alleged statement made to Wynne in regard to its preparation and execution; the cross-action of deceased in the divorce action; and the fact that a divorce was granted. And under her propositions 1 to 7, inclusive, and No. 9, asserts that the issue being whether deceased during his lifetime gave to plaintiff the contents of the box, this constituted no defense to her suit; irrelevant and immaterial; that the contents of the will and deceased's statements to Wynne were hearsay and ex parte and not admissible in the present suit; highly prejudicial and inflammatory.

██ This action of the court is not thought to be reversible error. Witnesses for plaintiff testified to statements of deceased made to them respectively in regard to his intention, his will and reasons for making same. These were substantially to the same effect as detailed by Wynne. The court admitted deceased's cross-action in the divorce action after Wynne, who had represented deceased in that action, testified that the statements therein contained had been made to him by deceased at the time, and there reduced to writing. The contents of the divorce decree were not admitted in evidence. It is to be observed that plaintiff predicates her claim upon alleged oral declarations of deceased. "Where it is attempted to establish a gift from the husband to the wife, by evidence of the husband's declarations alone, the courts should exercise great caution in not excluding from the consideration of the jury any admissible evidence which would

tend, though in ever so slight a degree, to counteract the evidence of the husband's declarations," such a gift causa mortis being a donation made without the safeguards cast by the law around the execution of wills. Barziza v. Graves, 25 Tex. 322. See also Robbins v. Wynne, Tex.Com.App., 44 S.W.2d 946, 950; 24 Am.Jur. p. 733; 28 C. J. p. 681, Sec. 86; Szabo v. Speckman, 73 Fla. 374, 74 So. 411, 414, L.R.A.1917D, 359; Begovich v. Kruljac, 38 Wyo. 365, 267 P. 426, 60 A.L.R. 1046. "Evidence, whether direct or circumstantial, is competent when introduced for the purpose of either sustaining or defeating a gift." 12 R.C.L. 970. Under above-stated rules, this evidence objected to was not immaterial and irrelevant.

Over objections of plaintiff, attorney Wynne, Miss Armstrong, his private secretary, and attorney Wade, associated in the same law firm, were permitted to testify to alleged statements made by plaintiff to each of them after deceased's death. In her talk with Wade and Miss Armstrong in the reception room of Wynne's law office, at a time when he was not present, plaintiff's alleged statements are to the effect that she was satisfied with the terms of the will, but if Bob McGrede contested it she was going to see if she could get something, too; inquired about the value of the annuity life insurance policy, and complained about the status of the title to the residence. Plaintiff testified that when she talked with Miss Armstrong it was a casual conversation, as one woman to another. She also claimed to have gone to the office with view of seeing Wynne to employ him. In the alleged several conversations she had with Wynne her statements were to the same effect, and, in addition, that she wanted Wynne to see the children and get them to finish paying out the insurance policy; inquired if she would get a deed to the residence in Cason, Texas, which deceased had promised her; that she thought deceased had indorsed over to her some bonds in the lock box, and if so, inquired if she would get them, and if an inventory would be made of the contents; that she had the keys at her home and would bring them over when they got ready to go into the box. It is obvious that this testimony was material, not as to what plaintiff claimed, but as to what she did not claim at the time. Plaintiff denied making any of the statements attributed to her. Upon objections being urged that above statements were privileged communi-

cations between an attorney and client and the same inhibition applied to alleged statements made to the private secretary and the associate attorney, the court heard testimony out of the hearing of the jury bearing upon above alleged relationship.

Upon this voir dire hearing, Wynne admitted that deceased in the presence of plaintiff had requested him and he had promised to look after plaintiff's affairs. It is her testimony that she went to Wynne's office to employ him and that what statements she might have made were with that purpose in view. She admits that Wynne promptly informed her that he could not represent her, and claims that she talked with Wynne only one time, and that, when he was on his way to the golf links. When asked when was the next time she talked to Wynne, she replied, "I don't remember"; and how many conversations she had with Wynne, replied, "That is the only one I recall right now." It is Wynne's testimony that he informed her promptly that he represented the estate and would fight Bob, her, or any one else "from hell to breakfast" if they tried to upset what deceased started out to do; that she talked with him a number of times in regard to the property items above mentioned. Without further details, they contradicted each other as to where she first talked with Wynne and the number of times. It is not clear what statements were made, if any, before Wynne informed her that he could not represent her, or what part of the alleged statements she made in subsequent talks. Communications made to an attorney after being informed that no employment would or could be accepted are not privileged. Farley v. Peebles, 50 Neb. 723, 70 N.W. 231; 28 R.C.L. p. 556; 5 A.L.R. 729; Plano Mfg. Co. v. Frawley, 68 Wis. 577, 32 N.W. 768, 770; Wigmore, Evidence, 2304. The burden of proof to establish the existence of the privilege rested upon plaintiff who claimed it. Phelps Dodge Corp. v. Guerrero, 9 Cir., 273 F. 415. The question whether the testimony was privileged was a question for the trial court, and upon conflicting evidence the decision of the trial court must be deemed conclusive. Harris v. Daugherty, 74 Tex. 1, 11 S.W. 921, 15 Am.St.Rep. 812; Phelps Dodge Corp. v. Guerrero, supra; 70 C.J. p. 460; Dwelly v. McReynolds, 6 Cal.2d 128, 56 P.2d 1232. In view of the conclusions just stated, we pretermit a discussion of appellees' further claim that plaintiff upon cross-examination of these witnesses brought out the same matters and thereby waived her objection that it was privileged.

The jury's finding to question No. 3 was determinate of the disposition of this cause. For this reason, there is no need to discuss the court's refusal to give the special instruction relating to special issue No. 4. No bill of exception appears in support of the matter complained of in the 12th proposition. The other propositions advanced but not herein discussed have been carefully considered and are respectfully overruled.

Appellees in a counter proposition assert "There being no written authorization accompanying the purported gift, the purported gift to her was incomplete in that she did not have complete dominion over the contents thereof" and appellees were entitled to judgment as a matter of law. Dodson v. Matthews, 22 Tenn.App. 49, 117 S.W.2d 969, and McAdoo v. Dickson, 23 Tenn.App. 74, 126 S.W.2d 393, are cited by litigants in support of their respective contentions. In view of the jury's findings, we deem it unnecessary to discuss this counter proposition other than to state that the law applicable to gifts causa mortis and to the question here raised is fully discussed in 24 Am.Jur. under Gifts, Secs. 25–28, incl.

Counsel for appellant is to be complimented for the able and exhaustive brief in the manner and form so presented. After careful consideration of this record it is not thought that any of the matters presented would warrant a reversal of the judgment entered.

The judgment is affirmed.