In the Interest of R_____ B_____.

No. 12–87–0052–CV.

Court of Appeals of Texas, Tyler.

Oct. 12, 1987.

Craig D. Caldwell, Rusk, for appellant.

Leland Sutton, Co. Atty., Rusk, Ed Jones, Co. Atty., Lufkin, for appellee.

COLLEY, Justice.

This is an appeal by R___ B___ from an order committing[1] him to the Rusk State Hospital for in-patient care for a period of time not exceeding twelve months.

Appellant contends the trial court erred in admitting expert medical testimony of two staff physicians of the hospital against his claim of privilege and in overruling his motion for instructed verdict. We reverse the judgment and order the appellant dis-

charged from custody of the Texas Department of Mental Health and Mental Retardation.

The State offered the opinion testimony of two medical doctors, James R. Markette, a clinical psychiatrist on the staff of Rusk State Hospital, and James A. Hunter, clinical director of the Maximum Security Unit of the same facility. No other testimony was offered by the State. Both doctors testified that appellant was mentally ill and required extended in-patient care for his illness.

The record shows that appellant claimed his privilege[2] against the disclosure of communications between him and the physicians and the records of Rusk State Hospital relating to his diagnosis, evaluation and treatment.

Appellant argues that the testimonies should have been excluded because the trial court failed to find that he had been previously informed by either of the physicians that communications would not be privileged as required by Rule 510(d)(4).[3]

We are confronted at the outset with the problem of deciding whether the privilege provided in Tex.R.Evid. 509 or the privilege provided by Rule 510 is applicable here. Both rules became effective on September 1, 1983.

Rule 509 confers a privilege of confidentiality to a "patient" who is defined as a "person who consults or is seen by a *physician* to receive medical care." (Emphasis ours.) Rule 510 confers a privilege of confidentiality to a "patient" who is defined as a "person who (A) consults, or is interviewed by, a *professional* for purposes of diagnosis, evaluation, or treatment of any mental or emotional condition or disorder." (Emphasis ours.)

---

1. Pursuant to Tex.Rev.Civ.Stat.Ann. art. 5547–51(d)(1) (Vernon Supp.1987). All references to articles are to the Texas Mental Health Code (Vernon Supp.1987).

2. Provided by Tex.R.Evid. 510(b)(1), (2). All references herein to rules are to the Texas Rules of Evidence unless otherwise indicated.

3. Reading, "When the judge finds that the patient after having been previously informed that communications would not be privileged, has

made communications to a professional in the course of a court-ordered examination relating to the patient's mental or emotional condition or disorder, providing that such communications shall not be privileged only with respect to issues involving the patient's mental or emotional health. On granting of the order, the court, in determining the extent to which any disclosure of all or any part of any communication is necessary, shall impose appropriate safeguards against unauthorized disclosure."

Rule 509(a)(2) defines a "physician" as "a person *licensed* to practice medicine in any state." (Emphasis ours.) Rule 510(a)(1)(A) defines a "professional" as "any person (A) *authorized* to practice medicine in any state." (Emphasis ours.) Both rules define "confidential" communications in virtually identical language. Rule 509 confers a privilege respecting confidential communications between a "physician" and his patient "relative to or in connection with any professional service rendered" by the physician and any records maintained by him. Rule 510 confers a privilege respecting confidential communications between a "professional" and a patient as well as the records maintained by a professional. Neither rule defines "communications."

A distinction, not material here, is that the privilege conferred by Rule 509 applies only to confidential communications passing between a physician and his patient and to the physician's records; whereas, the privilege conferred by Rule 510 applies to communications passing between a "professional"[4] and the patient.

However, as here, where the confidential communications and records sought to be excluded are between a "patient" and a person, who is both a "physician" under Rule 509 and a "professional" under Rule 510, it becomes necessary for the court to determine which rule is applicable because of the difference in the exceptions to the privilege provided by the rules.

Rule 102 enjoins a construction of the Rules of Evidence that ensures fairness in the administration of justice, eliminates unnecessary delay and expenses in the trial of causes and promotes orderly development of "the law of evidence" so that truth and justice will be done in judicial proceedings.

With that injunction in mind, we have carefully studied the text of both rules. Both provide exceptions allowing disclosure of privileged information communicated to a medical doctor by his patient in court proceedings. The exception in Rule

509(d)(7), pertinent here, states that the privilege does not exist "in an involuntary civil commitment proceeding, [or in a] proceeding for court-ordered treatment." Under Rule 510(d)(4) the privilege exists even in an involuntary civil commitment proceeding under the Texas Mental Health Code unless the court makes a finding, supported by clear and convincing evidence,

that the patient after having been previously informed that communications would not be privileged, has made communication to a professional [including a medical doctor] *in the course of a court-ordered examination* relating to the patient's mental or emotional condition or disorder, providing that such communications shall not be privileged only with respect to issues involving the patient's mental or emotional health. (Emphasis ours.)

■ Based on our reading of the rules, we conclude that the rule of privilege conferred by Rule 509 and by Rule 510 are indistinguishable as to communications passing between a person licensed or authorized to practice medicine and his patient, and thus *both* are applicable and must be read together. In so doing, we must look to the exceptions to the privilege conferred by the rule in order to determine the question presented.

■ Under our construction of the exceptions, we conclude that in circumstances where a "patient" is examined, consulted, interviewed or treated by a medical doctor, regardless of his speciality, pursuant to a *court order*, the exception expressed in Rule 510(d)(4) is applicable.

■ In this case, it is undisputed that R___ B___ was initially committed to the Austin State Hospital by court order under article 5547–50 for in-patient care and treatment. It is also undisputed that R___ B___ was transferred to Rusk State Hospital by the Texas Department of Mental Health and Mental Retardation. There he was examined and treated by at least

---

**4.** Defined to include medical doctors as well as other persons, "(B) licensed or certified by the state ... in the diagnosis, evaluation or treat-

ment of any mental or emotional disorder; or (C) involved in the treatment or examination of drug abusers; ...." Rule 510(a)(1)(B)(C).

three medical doctors. Two of those doctors, viz., James R. Markette, and James A. Hunter, testified at trial.

We judicially know that when a person is committed by court order for "Temporary Mental Health Services" as an in-patient under article 5547–50, the services ordered by the court include examination and interview of the patient so that a diagnosis can be made and treatment provided for the patient's mental or emotional disorder. The record thus establishes the confidential relationship from which the privilege arises under Rules 509 and 510. Therefore, the burden of proof [5] resting on R___ B___ to show the existence of the privilege was satisfied. He made his prima facie showing. Whereupon, the burden shifted to the State to demonstrate that the requirements of Rule 510(d)(4) had been met. The State failed to do so.

Therefore, the opinion testimony of the medical witnesses should have been excluded upon R___ B___'s claim of confidentiality.

The judgment is reversed and R___ B___ is ordered discharged from the custody of the Texas Department of Mental Health and Mental Retardation.

---

**5.** *See McGrede v. Rembert National Bank,* 147 S.W.2d 580, 584 (Tex.Civ.App.—Texarkana 1941, writ dism'd judgmt cor.); *Ballard v. Ballard,* 296 S.W.2d 811, 816 (Tex.Civ.App.—Galveston 1956, no writ).