NYE ODORLESS INCINERATOR CORPORATION, a corporation existing under the laws of the State of Delaware, *v.* AUGUSTUS C. FELTON, JR.

---

*(January* 28, 1931.)

RODNEY, J., sitting.

*James R. Morford* and *Arthur G. Logan* (of Marvel, Morford, Ward and Logan) for plaintiff.

*Daniel O. Hastings* and *John R. L. Smith* and *Joseph Le Conte Smith* (of the Macon, Georgia, Bar, admitted *pro hac vice*) for defendant.

Superior Court for New Castle County, Foreign Attachment Case, No. 64, January Term, 1930.

RODNEY, J.: ■ ■ The admission of the offered exhibit dated July 14, 1928, has been opposed because the agreement of December 15, 1928, between Shemwell and Felton (adopted and affirmed by the subsequent agreement of December 24, 1928) is assumed to include and supersede all prior understandings and agreements.

It is argued by the plaintiff that false representations and fraud in the negotiations led to the execution of the contract, and that in such a suit as the present, these alleged fraudulent representations can be shown where the contract is based upon the representations themselves.

The defendant contends that the admission of the paper in question is controlled by the law of Georgia and that under such law the preliminary fraud inducing the contract cannot be shown where the other party still affirms the contract; but can only be shown where there is a rescission or offer to rescind such contract.

The suit is in tort and is transitory in its nature. It is based upon alleged fraudulent representations said to have been made in New York and other places. The alleged result of the representations was that an undue amount of stock of the plaintiff (the Delaware corporation) was issued to the nominees of the Georgia corporation. The actual delivery of securities was to have been made in Georgia.

No law of Georgia is alleged or proven. I am of the opinion that I cannot take judicial knowledge of the law of that state (*Mackenzie Oil Co. v. Omar Oil & Gas Co.*, 4 *W. W. Harr.* (34 *Del.*) 435, 154 *A.* 883; *Phœnix Oil Co. v. Mackenzie Oil Co.*, 4 *W. W. Harr.* (34 *Del.*) 460, 154 *A.* 894), even though such law was applicable to answer this question of which I am not convinced. This objection to the admissibility of the proffered testimony is, therefore, overruled and the letter admitted.

The plaintiff offered in evidence certain newspaper articles and editorials appearing in the *Every Evening*, a daily paper published in Wilmington. The offer was made to sustain the charge in the declaration of the lack of good-will of the Nye Odorless Crematory Company, the Georgia Corporation, in and about Wilmington at the time in question; the existence of good-will being one of the fraudulent representations alleged to have been made. The offer was objected to.

RODNEY, J.: ██ The testimony is offered not for the purpose of proving the truth of the articles in question, but more particularly for the purpose of proving the lack of good-will of the Nye Odorless Crematory Company in and about Wilmington, at the time in question, if not indeed the presence of a definite bad will.

One objection to the admission of the evidence offered is the absence of any oath in connection with the testimony and the entire inability on the part of the defendant to conduct any cross-examination in connection with the offer. This cross-examination conceivably might show bias or other motives which might destroy the value of the testimony showing a lack of good-will, or it might develop evidence from which the jury could draw the conclusion that no lack of good-will existed. The offer in this case furnishes no recognized exception to the hearsay evidence rule.

It is difficult to draw a distinction between the offer, as evidence of an editorial and news item of a newspaper, on the one hand, and a letter signed by a subscriber and published in the paper, on the other hand. Both have the same circulation and reach the same subscribers.

If this analogy be correct, it would be difficult to draw the further distinction between an anonymous letter published in the paper and another anonymous letter prepared by process of mimeographic copies and sent to the same number of people covered by the newspaper circulation. This, I take it, would be clearly inadmissible. I must, therefore, adhere to my former ruling and exclude the testimony offered.

The deposition of a certain witness, taken outside of the state, was presented. It appeared that this witness had refused, on advice of counsel, to answer many questions under cross-examination. The deposition was offered in evidence by the plaintiff and objected to by the defendant. The materiality of the questions having been established by ruling of the Court (Rodney, J.), the objection to the admission of the deposition was sustained.

As an item of damage, the plaintiff, the Delaware corporation, attempted to prove the expenses incident to its creation. The evidence was excluded because the company was a going concern and there was proof that it had a good-will. The Court (Rodney, J.) held that the organization expense could not be separated and charged against the defendant.

At the conclusion of the plaintiff's testimony, a motion for a non-suit was made by the defendant:

1. Because misrepresentations made to a promoter of a non-existent corporation could not be made the basis of an action in favor of that corporation when subsequently formed.

2. Because the particular transaction was a sale of all of the assets of the old Georgia Corporation to the new Delaware corporation, the plaintiff, and because the new Delaware corporation gave all of its stock to the old Georgia Corporation.

It was contended that all of the value which the new Delaware corporation had, came from the old Georgia Company, and that it was immaterial what value that company placed on its property if all of the stock of the new corporation was transferred to it; that there could then be no actionable damage by the new corporation.

RODNEY, J.: This is the same motion that was made at an earlier stage of the case and at that time I indicated that the matter would probably be renewed at a later time and I did not then assign any reason for my conclusion.

Two reasons are now advanced.

First, can a suit be maintained at law, sounding in tort, at the instance and in the name of a corporation based upon alleged fraudulent misrepresentations by a vendor to the promoter of the proposed corporation, which was afterwards incorporated?

The defendant contends that the suit cannot be main-

tained by the corporation for any supposed misrepresentation prior to the existence of the corporation. In short, the defendant claims that unless a corporation is liable to a third person for the acts of the promoter, it cannot be entitled against a third person to the benefits or causes of action accruing to the promoter.

The plaintiff contends that where false and fraudulent misrepresentations are made to individuals to induce them to form a corporation for the purpose of purchasing property, or rights, or entering into a contract, and the corporation, when created by such individuals, who become its stockholders and officers, acts upon such representations to its injury, it may maintain an action.

The plaintiff bases its contention on the general and underlying proposition that where misrepresentations are made to one person, with the intention that they be communicated to another, and acted upon by such other, and as a fact such representations are communicated and acted upon to the prejudice of a stranger, an action of deceit will lie. 12 *R. C. L.* 326, § 95; *Wells v. Cook,* 16 *Ohio St.* 67, 88 *Am. Dec.* 436, *note,* 442. See, also, 85 *Am. St. Rep.* 369, *note.*

This general proposition is not disputed by the defendant but only its application to the case of a non-existent corporation.

In *Scholfield Gear & Pulley Co. v. Scholfield,* 71 *Conn.* 1, 40 *A.* 1046, a suit by the corporation was sustained. See, also, *Hudson-Mattagami Exp. Co. v. Wettlaufer, etc.,* 3 *Dom. L. R.* (1928) 661.

In *Ehrich on Promoters,* § 234, *page* 433, it is said:

"If representations are made with the purpose of inducing persons to organize a corporation, to take over certain property or to enter upon particular engagements and the persons deceived do, in reliance upon the representations made, organize the corporation and cause it to take the contemplated action, it may fairly be said that the representations were made with intent to deceive the corporation, that it was deceived thereby and acted thereon to its damage."

On *page* 206, § 285, of the same work the author also said:

"If the owner of property procures a sale thereof to the corporation by means of false representations made to its promoters, he may be held liable to the corporation on the theory that its purchase was induced by fraud, though the promoter occupied at the time the representations were made no official relation to the corporation."

That is with reference to the first point.

With reference to the second point, it is argued that there can be no cause of action in the plaintiff corporation itself after all of the assets of the Georgia Company were transferred to the Delaware corporation in return for all of the stock of the Delaware corporation being issued and delivered to the Georgia Company. This, it is claimed, makes a pure re-organization and for this is cited *Ehrich on Promoters,* § 120, and other authorities.

No case has been found involving the precise matter now before this Court of a suit by a corporation against a vendor based on misrepresentations of the vendor to the promoters. By analogy, the reasoning of the case in which a corporation sought to recover from a promoter secret profits obtained by the promoters has been adopted.

Much reliance is placed by the defendant upon the case of *Old Dominion Copper, etc., Co. v. Lewisohn,* 210 *U. S.* 206, 28 *S. Ct.* 634, 52 *L. Ed.* 1025, and upon the language of the Supreme Court of Delaware in *Henderson v. Plymouth Oil Co.,* 16 *Del. Ch.* 347, 141 *A.* 197.

The *Lewisohn Case* was a case brought by the corporation against a promoter for the recovery of alleged secret profits made by such promoter. The Court held that the corporation was bound by its action because at the meeting which adopted the contract, there were no stockholders or subscribers at the time who were deceived and, therefore, no stockholder or subscriber was defrauded. The theory of the *Lewisohn Case* is that the vendors and vendees were precisely the same parties.

There are many cases holding that a corporation may

recover secret profits from a promoter where there are, at the time of the contract, any stockholders or subscribers for stock who are without knowledge of the profits made by the promoter. *Yeiser v. U. S. B. & P. Co. (C. C. A.)*, 107 *F.* 340, 52 *L. R. A.* 724; *California Calaveras Mining Co. v. Walls*, 170 *Cal.* 285, 149 *P.* 595; *Tilden v. Barber*, *(D. C.)* 268 *F.* 587.

In *Davis v. Las Ovas Co.*, 227 *U. S.* 80, 33 *S. Ct.* 197, 57 *L. Ed.* 426, the Court upheld the right of a corporation to receive secret profits from a promoter who had received the entire original issue of stock because other innocent parties had been interested in the property and had no knowledge of the guilt of the promoters.

The whole question here involved is whether Shemwell and his associates can be considered in the same light as existing stockholders or subscribers at the time of the issuance of the stock to the Georgia Company. They were not, of course, technically stockholders nor actual subscribers of stock, but in the same contract which provided for the issuance of stock by the Delaware corporation to the Georgia Company or its nominees there is another provision which stipulates that simultaneously, the Georgia Company or its nominees, shall transfer to Shemwell and his associates the common stock of this Delaware corporation. It is plain that this stock, intended and stipulated to be immediately transferred, is the stock which should control the Delaware corporation, elect the directorate and manage the business.

Under these circumstances, since the agreement to assign the stock to innocent third parties is exactly contemporaneous with the issuance of the stock to the Georgia Company, I am of the opinion that Shemwell and his associates, who immediately received the stock, must be considered either as equitable stockholders, potential stockholders, or given some other name which would indicate that they had rights in the corporation at the time of the delivery of its stock to the Georgia Company.

If they be considered in the light of equitable or potential stockholders, they fall within the reasoning of the *Calaveras Case,* 170 *Cal.* 285, 149 *P.* 595, and *Tilden v. Barber,* (*D. C.*) 268 *F.* 587, and many cases to that effect sustaining the right of action in the company itself.

For the reasons indicated, the defendant's motion for a non-suit must be denied.

During the trial, while a witness for the defendant was on the stand, the plaintiff gave notice to produce certain written documents in the possession of the defendant and for the purpose of using them in cross-examination of the defendant's witness.

The defendant refused to produce the documents called for and was sustained by the Court. Quoting from 2 *Tidd's Practice,* § 804, the Court (Rodney, J.) held that "The regular time for calling for the production of papers is not until the party, who requires them, has entered upon his case; until that period arrives, the other party may refuse to produce them."

Joseph Le Conte Smith, of counsel for the defendant, was called as a witness in the case. The plaintiff objected on the general ground that an attorney was disqualified as a witness in this state.

RODNEY, J.: ▆ The exclusion of an attorney as a witness is not based upon the broad ground of public policy growing solely and strictly out of his relation as attorney, but must be founded on the character of the testimony sought to be elicited.

▆ Admissions of the opposite party can be proved by an attorney, *Jolls v. Keegan,* 4 *Penn.* 21, 55 *A.* 340; or a notice served on the opposite side. *R. E. Trust Company v. W. & N. C. E. Rwy. Co.,* 9 *Del. Ch.* 99, 77 *A.* 828.

The objection is, therefore, sustained.

The witness was later asked to identify the execution of a paper. The testimony was admitted over the objection of the plaintiff.

■ Rodney, J., in overruling the objection, said:

"I overrule the objection. Upon the authority of *Real Estate Trust Company v. Wil. & New Castle Electric Rwy. Co.*, 9 *Del. Ch.* 99, 77 *A.* 828, I am of the opinion that the testimony of an attorney is not now excluded upon the broad ground of general policy; that such exclusion cannot be on the interest of the witness himself as that has since been abolished; that there is nothing in the testimony of this witness which indicates that his testimony is based upon any confidential communication between client and attorney. That there is nothing indicated by the answer of the witness, or what his answer must be to the question, in contradiction of any previous testimony in the case."

He also said in *Abbot v. Striblen*, 6 *Iowa* 191, the Court held that an attorney could testify as to the execution of a note lost since the case had begun.

I am, therefore, of the opinion that the testimony of this witness, to the formal execution of a paper, is competent evidence.[1]

After the conclusion of the defendant's case, the plaintiff moved to reopen its case in chief for the purpose of explaining certain documentary evidence, which had been introduced by it. The testimony was not in rebuttal of any of the defendant's testimony but solely explanatory of the plaintiff's own documentary evidence.

The Court (Rodney, J.) held that the matter rested in the sound discretion of the Court and granted the application.

RODNEY, J., after stating the facts substantially as above, charged the jury, in part, as follows:

The plaintiff is Nye Odorless Incinerator Company, a corporation of the State of Delaware, and the defendant is Augustus C. Felton, Jr.

The plaintiff generally contends that it was induced to enter into the bargain and to purchase the assets and business of the Georgia Company upon the representations made by the defendant in this case; that pursuant to these

---

[1] See, also, *Gray, Adm'x, v. Pa. R. R. Co.*, 3 *W. W. Harr.* (33 *Del.*) 450, 139 *A.* 66.

representations, it believed that the Georgia Company had patents and patent-rights of great value and that they covered all types of incinerators manufactured by that company, including the circular type of incinerator; that the Georgia Company was the largest incinerator company in the United States; that it had faithfully executed its contracts for the erection of incinerators and that it possessed a good-will throughout the United States. The plaintiff contends that the representations were untrue as to the patents and patent-rights; that the Georgia Company was not the largest in the United States and that certain plants erected by the Georgia Company had been improperly and unsatisfactorily erected and that as a consequence the Georgia Company did not possess good-will in many parts of the country. The plaintiff further contends that the auditor's report of November 15, 1928, which it alleges the defendant represented to the prospective purchasers as a correct statement of the financial condition of the company did not contain certain contingent liabilities which affected the good-will of the company.

The defendant expressly and in detail denies each and all of the allegations of the plaintiff and contends that no such misrepresentations as claimed by the plaintiff were made.

The defendant further contends that the plaintiff did not act upon the misrepresentations alleged to have been made by the defendant as to any patents or patent-rights, good-will, or representations as to the financial condition of the company; but that it expressly acted upon an independent investigation inaugurated and completed by the plaintiff, its promoters, or those in connection with it prior to the time that the contract was consummated.

The defendant has requested that the jury be instructed to return a verdict in favor of the defendant.

This general prayer is based upon three grounds:

1st. That no cause of action could exist in the plaintiff

corporation, as a corporation, because all of the assets of the Georgia Company were transferred to the Delaware corporation in return for the issuance and delivery of all of the stock of the Delaware corporation to the Georgia Company; and that, therefore, there were no innocent and defrauded parties. Much reliance has been placed by the defendant upon the case of *Old Dominion Copper Co. v. Lewisohn*, 210 *U. S.* 206, 28 *S. Ct.* 634, 52 *L. Ed.* 1025.

For the reasons stated at an earlier period of this trial, and because in the same contract which provided for the issuance of the stock by the Delaware corporation to the Georgia Company, there was another provision which stipulated that, simultaneously, the Georgia Company should transfer to some syndicate associates the common stock of the Delaware corporation, I am unable to charge you, on this account, to return a verdict for the defendant. I am of the opinion that the syndicate associates must be considered as equitable or potential stockholders.

The second ground for this general prayer of the defendant is that no cause of action could exist on behalf of a corporation, for alleged fraudulent misrepresentations by a vendor to a promoter of the corporation, before it was created.

For the reasons stated in this matter at an earlier stage in this case, and upon the authorities stated in the former opinion, I am unable to grant the general prayer for this cause.

The third ground for this general prayer of the defendant is that the contract was made, executed and performed in the State of Georgia and should be construed according to the law of the State of Georgia.

It is contended that the law of the State of Georgia does not permit an action based upon fraudulent misrepresentations except when the parties acting upon such alleged fraudulent misrepresentations has sought a rescission of the contract.

In the view that I have heretofore taken it is unnecessary to consider whether the law of Georgia governs this case, because such law had not been pleaded, and the application of the law of that state is by no means an admitted fact.

For these reasons, I am of the opinion that the general prayer of the defendant for a directed verdict should not be granted.

I may state that these grounds for refusing a directed verdict are here set out, not for your consideration but that they may be made a matter of record so that a proper review of the questions may be had, in case I am in error in these particulars.

I shall now state, as clearly and concisely as I can, the principles of law applicable to the present case:

This is what is commonly known as an action of deceit. The gist or foundation of the action is fraud. Without fraud the action does not exist. Fraud necessary to support the action exists where a person makes a false representation of a material fact, susceptible of knowledge, knowing it to be false, with the intention to deceive the person to whom it is made, and the latter relying upon it, acting with reasonable prudence, is deceived and induced to do or refrain from doing something to his pecuniary loss or damage.

In order to support an action of this kind, it is necessary for the plaintiff to satisfy the jury by a preponderance of the evidence, (1) that the defendant made a substantial, material representation respecting the transaction; (2) that it was false; (3) that when he made it he knew that it was false; (4) that he made it with the intention of inducing the plaintiff to act upon it; (5) that the plaintiff was misled thereby and in reliance thereon, did act upon it, and it thereupon suffered damage.

I will say to you now that if you should find that these requisites necessary to sustain the action have been

established to your satisfaction, your verdict should be for the plaintiff. If, however, you should find that the plaintiff has failed to prove any one or all of these essential elements, your verdict should be for the defendant.

 Fraud is never presumed, and, whenever it is relied upon in support of an action, it must be proved to the satisfaction of the jury, and by the party relying on it. It may be shown either by direct or positive evidence, as by the declarations or admissions, if any, of the party charged, or by circumstantial evidence; that is, by taking into consideration the conduct of the parties and all the facts and circumstances attending the transaction, if, in the judgment of the jury, they are reasonably sufficient to establish the existence of fraud.

 One of the elements as constituting the actionable misrepresentations just pointed out is that when the defendant made the misrepresentations he must have known that they were false. This should be qualified to the extent that when he made the representations he must either have known that the representations were false, or that he must have spoken with a reckless indifference to the truth of the matters and without knowledge of their truth, intending that the person to whom the representations were made was to act upon such statements as if they were true.

 In order to constitute actionable fraud, there must, as a general rule, be a false representation as to a material matter of fact, which fact must be one either in existence or which has existed and the statement must relate to a fact susceptible of knowledge. Generally, fraud cannot be predicated upon the mere expression of opinion which is understood to be only as such nor upon mere representations of matters of estimate or judgment. There is, however, no certain rule by the application of which it can be determined when false representations constitute matters of opinion or matters of fact, but each case must be adjudged upon its own particulars. The mere fact that a

statement takes the form of an opinion does not necessarily remove from it its actionable status and conversely even though a matter of opinion is stated positively does not make such opinion a matter of fact. 12 *R. C. L., page* 244.

If you should find from evidence that any of the representations made by the defendant to the plaintiff or its representatives, were matters of opinion, and intended to be such, and not intended as matters of fact upon which the plaintiff should rely, then this action could not be based upon such matters of opinion.

You have heard much testimony concerning the good-will of the Georgia Company purchased by the plaintiff.

Good-will is a term well known in the law and in business but it is quite difficult to state a concise and at the same time comprehensive definition of it. It has been defined as "the advantage or benefit which is acquired by an establishment beyond the mere value of the capital, stock, funds, or property employed therein in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position or common celebrity, or reputation for skill or affluence or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices." *Hopkins on Trademarks,* 218, *etc.*

Our own courts have defined good-will as "property incident to the business sold, and the favor which the vendor of a business has won from the public, and the probability that old customers will continue their patronage." *Scotton v. Wright,* 2 *W. W. Harr.* (*32 Del.*) 192, 121 *A.* 180, 181-184.

Good-will is an intangible incident to other property. It does not exist of and by itself, and is incapable of existence or disposal separate from that thing to which it is an adjunct. Its existence in connection with other property, however, may be very real and the authorities are uniform that good-will may be the subject of value and price. It

may be sold in connection or conjunction with a business, as an incident of such business; and an action for deceit may be based upon misrepresentations as to such good-will, provided all the other elements appear which are required to be present in order to sustain an action for fraudulent misrepresentations.

In this case in addition to a denial of all of the allegations of the plaintiff, the defendant contends that the plaintiff did not rely upon the representations made to it or those acting for it, by the defendant; but that the plaintiff company, or those acting for it, conducted their own investigation covering all of the representations of the defendant, and that the plaintiff company acted upon the results of these investigations and not upon the representations of the defendant.

Our own court, in *Omar Oil & Gas Co. v. Mackenzie Oil Co., 3 W. W. Harr.* (33 *Del.*) 259, 276, 138 *A.* 392, with reference to the reliance upon a separate investigation rather than on the representations of a vendor, in substance, stated that the buyer will not be prevented from availing itself of false representations of the seller, unless it makes an investigation on its own account, and such investigation is of such a character as to fully acquaint it with the essential facts. If the buyer made an investigation that was free and unhampered, and conditions were such that it must have obtained the information it desired, or the facts it sought to know were as obvious to it, or its agents as to the seller, and their means of knowledge were equal, it is presumed to have relied on its own investigation and not on the representations of the seller. In such case it could not have been misled by the seller.

If you should find from the evidence that the plaintiff did not make an investigation on its own account, or did not have the opportunity of ascertaining the essential facts covered by the representation of the defendant, or should find from the facts that the plaintiff did not rely upon its

own examination, because of its incomplete character, but did rely upon the representations by the defendant, then your verdict may be for the plaintiff, if the other elements necessary in this action, as heretofore stated, be present.

If on the other hand, you should find that the plaintiff did make an investigation on its own account, of such a character as to fully acquaint it with the essential facts, and that the conditions were such that it must have obtained the information it desired and you should further find that the plaintiff relied, or that circumstances were such that it was presumed to have relied, upon its own investigation and not upon the representation of the defendant, then your verdict must be for the defendant.

Summarizing, therefore, and in conclusion I would say that if you should find from the evidence that the defendant, Felton, first, made material misrepresentations, concerning an essential part of the transaction here involved; and, second, that these representations were false; third, that they were known to be false; fourth, that they were made with the intention of having the plaintiff act upon such misrepresentation, and, fifth, that the plaintiff was misled thereby, and in reliance thereon did act, and thereupon suffer damage; then your verdict should be for the plaintiff.

If, on the other hand, you should find that any of these elements were lacking; or that the representations made were true and not false; or that the defendant, Felton, did not know them to be false; or that they were not made with the intention of inducing the plaintiff to act upon these representations; or that the plaintiff did not act upon these representations but upon its own separate investigation; or should find that the plaintiff has not suffered loss by reason of its reliance thereon; then, if you should find any of these facts, your verdict must be for the defendant.

The measure of damages in such a case as the present, if a verdict is found for the plaintiff, is the difference between the real value of the property purchased, at

the time of the purchase, and the value which it should have had if the representations had been true. The true measure of damages in such cases has been the subject of much diversity of opinion, but that given above is conceded by counsel in this case and seems more consistent with the adjudicated cases in this state. *Burton v. Young*, 5 *Harr.* 233; *Collins v. Tigner*, 5 *Penn.* 345, 60 *A.* 978; *Loper v. Lingo*, 6 *Boyce* 170, 97 *A.* 585.[1]

If, therefore, your verdict should be for the plaintiff, it should be for such sum as in your opinion represents the difference between the value of the property conveyed by the Georgia Company to the Delaware corporation and what this value would have been had the representations of this defendant been true.

Damages for loss of good-will, owing to the peculiar nature of the property right, is not subject to the exact calculation attainable in many cases. This uncertainty is not to work a denial of justice to a party who may have been wronged but the damages must be ascertained from all the facts and circumstances. This does not mean the striking down of all legal barriers for even in such cases the plaintiff is called upon, in order to recover substantial damages, to furnish sufficient data to enable the jury with a reasonable degree of certainty and exactness to estimate the actual damages suffered.

If your verdict should be for the defendant, it should simply be for the defendant.

(The Court then charged on conflict of evidence.)

Verdict for the defendant.

---

[1] See, also, *Mackenzie Oil Co. v. Omar Oil & Gas Co.*, 4 *W. W. Harr.* (34 *Del.*) 435, 154 *A.* 883; *Phœnix Oil Co. v. Mackenzie Oil Co.*, 4 *W. W. Harr.* (34 *Del.*) 460, 154 *A.* 894; *Montgomery v. Jacob Bros. Co.*, 5 *W. W. Harr.* (35 *Del.*) 111, 159 *A.* 374.