EDNA POOLE *et al.,* Plaintiffs Below,
Appellants,

*vs.*

N. V. DELI MAATSCHAPPIJ *et al.,* Defendants Below,
Appellees.

*Supreme Court, On Appeal, October 31, 1966.*

284

*Daniel O. Hastings, Clarence W. Taylor* and *Russell J. Willard, Jr.,* of Hastings, Taylor & Willard, Wilmington, and *Otto E. Koegel, William F. Koegel* and *David W. Bernstein,* of Royall, Koegel & Rogers, New York City, for plaintiffs below, appellants.

*Richard F. Corroon,* of Berl, Potter & Anderson, Wilmington, and *Walston S. Brown,* of Willkie, Farr, Gallagher, Walton & Fitz-Gibbon, New York City, for defendants below, appellees.

Wolcott, C. J., and Carey and Herrmann, JJ., sitting.

Herrmann, Justice: This appeal raises the question of the measure of damages to be applied in an action for inducing a sale of stock by fraudulent misrepresentation.

The plaintiffs formerly owned stock of American Sumatra Tobacco Corporation, a Delaware corporation (hereinafter "American Sumatra"), which was engaged in the business of growing tobacco in Connecticut, Georgia and Florida. By circular letter dated June 28, 1960, the defendant N. V. Deli Maatschappij, a Netherlands corporation (hereinafter "Deli"), which then owned more than 50% of the stock of American Sumatra, offered to purchase the publicly held stock of American Sumatra for $17. per share. The plaintiffs sold their stock to Deli in accordance with this offer. As the result of the offer, Deli acquired in excess of 200,000 additional shares of American Sumatra, thereby increasing its stock ownership to more than 90% of the outstanding shares of that company.

In October 1960 Deli organized, as its wholly owned subsidiary, Tobacco Holdings, Inc., a Delaware corporation, and transferred to that company all of its shares in American Sumatra. Shortly thereafter, American Sumatra was merged into Tobacco Holdings, Inc. under the provisions of 8 *Del.C.* § 253, the minority stockholders being offered $17. per share; and the name of Tobacco Holdings, Inc. was changed to American Sumatra Tobacco Corporation. That company continues to operate as a going concern.

In 1963, the plaintiffs brought a class action on behalf of themselves and all former holders of the stock of American Sumatra who had sold their stock to Deli in reliance upon the Offering Letter of June 28, 1960. The gravamen of the action is that the Offering Letter contained false, misleading and fraudulent representations, and that the stockholders who sold to Deli pursuant thereto were induced to sell their shares at a grossly inadequate price in reliance thereon. By this action, the plaintiffs seek to recover the difference between $17. per share paid by Deli and the true value of the stock.

After trial, the Chancery Court held (1) that the measure of damages is the difference between the price paid for the stock and the true value thereof; (2) that the correct method of ascertaining the

true or actual value of the stock is consideration of all relevant factors of value; and (3) "Conceding that plaintiffs have sustained their allegation that the sale of their stock to defendant Deli was induced by misrepresentations appearing in or omitted from the offering letter, they have failed to show that they have suffered any damage by reason of such misrepresentations." Thereupon, the Chancery Court gave judgment in favor of the defendants. The plaintiffs appeal.

The parties put different interpretations upon the above "Conceding that plaintiffs have sustained their allegation" language. The plaintiffs say it constitutes a finding by the trial court in their favor on the merits of the case; the defendants say that the word "Conceding" must be read to mean "Assuming" or "Even if it be conceded." The defendants' interpretation is undoubtedly correct because of the general "assuming arguendo" approach adopted by the trial court in the context and in other portions, hereinafter mentioned, of the memorandum opinion. We proceed, therefore, on the assumption that the trial court did not rule on the merits of the case and confined itself to the question of damages.

## I.

The amended complaint in this case seeks to recover "the difference between $17. per share and the true value of the common stock of American Sumatra Tobacco Corporation."

██ This is the measure of damages to be applied in this case. Since the plaintiffs seek to recover the difference between the actual value of the stock and the price paid, known as the "out-of-pocket" measure of damages, it is unnecessary for us to decide the applicability in this case of the other well-recognized measurement, called the "loss-of-bargain" rule, which would allow recovery of the difference between the actual and represented value of the stock. There is great contrariety of opinion as to the relative merits of the two rules; and it appears that few courts have followed either rule with entire consistency. See *Prosser on Torts* (3d Ed.) pp. 750-752; *Annotation* 124 *A.L.R.* 37-82. Also, it appears that the rule may shift, depending upon whether the defrauded plaintiff is the seller or the purchaser. See 37 *C.J.S. Fraud* § 143(a) and (b); 24 *Am.Jur. "Fraud and De-*

*ceit"* § 235; compare *Nye Odorless Incinerator Corp. v. Felton,* 5 *W. W. Harr.,* 236, 162 *A.* 504 (1931) and *Ranch v. Lynch,* 4 *Boyce* 446, 89 *A.* 134 (1913). In any event, since the plaintiffs' action is grounded upon the out-of-pocket measure of damages, that is the rule to be applied. Compare *Selman v. Shirley,* 161 *Or.* 582, 85 *P.2d* 384, 91 *P.2d* 312, 124 *A.L.R.* 1, 14 (1938).

■ In their briefs, the plaintiffs also urge a measure of damages based upon the difference between "actual and represented value" of the lands owned by the corporation. There are two reasons why this contention is unacceptable: First, it attempts to invoke a "loss-of-bargain" concept in addition to the "out-of-pocket" measure asserted in the complaint. The plaintiffs may not seek the application of varying measures of damages; they must be deemed to have elected the theory of damages set forth in their complaint under which the case was tried. Secondly, this contention equates asset value with stock value. As will be seen below, this is untenable under the facts of this case.

## II.

The plaintiffs contend that the trial court erred in determining the actual value of the stock on a "going concern" basis; that it should have been ascertained on a liquidation basis.

■ The general rule is that in determining the actual value of stock, consideration should be given to the various relevant factors of value including earnings, dividends, market price, assets, and any other pertinent factors on a "going concern" basis. This is the rule in fraud cases. *Neuman v. Corn Exchange National Bank & Trust Company,* 356 *Pa.* 442, 51 *A.2d* 759, 52 *A.2d* 177 (1947); *Campbell v. Shea,* 332 *Mass.* 422, 125 *N.E.2d* 922 (1955); *Ford v. H. W. Dubiske Co.,* 105 *Conn.* 572, 136 *A.* 560 (1927); *Otis & Co. v. Grimes,* 97 *Colo.* 219, 48 *P.2d* 788 (1935); *Treblehorn v. Bartlett,* 154 *Neb.* 113, 47 *N.W.2d* 374 (1951). This is also the approach to valuation in stock appraisal proceedings under 8 *Del.C.* § 262. *E. g.,* In re *General Realty & Utilities Corporation,* 29 *Del.Ch.* 480, 52 *A.2d* 6 (1947).

The plaintiffs contend, however, that the general rule should not be applied here because the Offering Letter represented a probable

liquidation. They build on this contention the argument that the defendants are thereby estopped to urge a going concern value; and from this they conclude that asset value only, to the exclusion of all other factors of value, should be considered in evaluating their stock. The trial court disagreed; and so do we.

■ The fallacy of the plaintiffs' position lies in the premise that the Offering Letter represented probable liquidation and presented an offer based on liquidation value only. In this connection, the plaintiffs rely upon two paragraphs of the Offering Letter: The first stated that the principal business of the corporation was the growing of wrapper tobacco used in the manufacture of cigars; that the future of the market for leaf tobacco was made uncertain by the possibility of manufactured wrappers; and that if manufactured wrappers proved acceptable, the market for grown wrappers might be drastically reduced. The second paragraph of the Offering Letter relied upon by the plaintiffs in this connection stated that in considering the effect of a substantial reduction of wrapper production on the value of common stock, consideration should be given to the fact that the value of the lands owned by the company might exceed considerably the book value thereof; that appraisals of the land holdings had been made, copies being attached, based upon an assumption of sale within one year.

Counterbalancing these statements, however, were the portions of the Offering Letter which set forth the usual "going concern" factors. The Letter furnished detailed general and financial information about American Sumatra as an operating company. It set forth a five year summary of the sales earnings of the corporation, on an aggregate and per share basis; the dividend record for the years 1956 through 1959 and for the first half of 1960; and the range of market prices of the stock during the same period of years. Also, attached to the Offering Letter was a copy of the latest consolidated balance sheet of the corporation as of July 31, 1959, and a copy of the consolidated statement of income and earned surplus for the fiscal year ending on that date. There is no dispute as to the accuracy and completeness of the financial data thus presented.

While there was emphasis in the Offering Letter upon the corporation's real estate holdings, and while the appraisals attached

assumed a sale within a one year period, the Offering Letter summarized that aspect of the offer by the statement:

> "Nothing herein contained should be construed as evidencing a belief on the part of the Offeror that the land of the Corporation or a substantial portion thereof should be disposed of by sale or otherwise. Whether such action would be desirable will depend among other things upon the future course of events in the wrapper tobacco industry."

Viewing the Offering Letter in its entirety, we agree with the trial court that there is no valid reason for a liquidation approach to the valuation of the stock and departure from the general "going concern" rule under which the value of stock is ordinarily determined.

In support of their proposition that damages should be based upon asset value only, the plaintiffs rely upon *Dellefield v. Blockdel Realty Co.* (2 Cir., 1942), 128 *F.2d* 85; *Sriver v. Maley,* 128 *Ind. App.* 619, 151 *N.E.2d* 518 (1958); *Treblehorn v. Bartlett,* 154 *Neb.* 113, 47 *N.W.2d* 374 (1951); *Kendrick v. Schwartz,* 69 *Cal.App.2d* 171, 158 *P.2d* 405 (1945). We have considered these cases and find that each is inapposite because of substantial factual differences; and none represents unqualified support for the broad rule for which it was cited. In this connection the plaintiffs also rely upon *Williams v. Beltz,* 7 *Boyce* 360, 107 *A.* 298 (1919). In that case, involving fraud upon the purchaser of stock, the corporation failed. Hence, the parenthetical language used by the Court, in applying Pennsylvania law and in equating the property and assets of the corporation with the value of the shares, is understandable but inapposite to the instant case in which there was no such cessation of the business of the corporation.

In seeking to equate asset value with the true value of the stock, the plaintiffs attempt to invoke the restitution doctrine that one deprived of his property by fraud is entitled to be put in substantially the position he would have been in had there not been the deprivation. On this basis, the plaintiffs claim that they should recover the difference between the price paid for their stock and their proportionate share of the appraised value of the lands as of the date of trial. No significant portion of the lands had been sold. In effect, the plaintiffs

contend that their stock should be evaluated as of the time of trial. The short answer to this argument is that it assumes asset value to be the sole factor in the determination of actual stock value; and, as we have seen, this is not proper in this case.

The plaintiffs cite in this connection *Speed v. Transamerica Corporation (D.Del., 1955)*, 135 *F.Supp.* 176. There, shortly after the defendants acquired the plaintiffs' stock, they liquidated the corporation and realized a substantial cash profit. In effect, the Court held that the plaintiffs were entitled to receive what they would have received if they had held the stock until liquidation—adopting a so-called "what-might-have-been" basis for the assessment of the value of the stock. Because of the factual differences, the *Speed* case is not authority for equating asset value with stock value in the instant case.

■ This contention may raise, however, the question of whether the actual value of the stock should be determined in the instant case as of the date of the transaction or as of some later date. See *Restatement of Restitution* § 151. Since this question has not been presented to the trial court and since factual issues may be involved, the question is not properly before us.

The plaintiffs assert that the merger of American Sumatra under § 253 was in effect a liquidation insofar as the plaintiffs were concerned, making asset value the only proper element to be considered in valuation of the stock. This Court has recently considered and rejected that contention. *Application of Delaware Racing Association, Del.*, 213 *A.2d* 203, 208 (1965).

We conclude, therefore, that the trial judge was correct in holding that the true value of the plaintiff's stock should be determined by consideration of all relevant factors of value.

## III.

■ The Chancery Court did not, however, make a determination of the true value of the stock. Rather, it arrived at a hypothetical evaluation by assuming the application to asset value, earnings value, and market value of the highest weightings permitted to such values in stock appraisal cases under § 262. The trial court assumed "the

weighting of those factors most favorable to the plaintiffs": 50% as to asset value, 25% as to earnings value, and 25% as to market value. The result was $22.49 per share. This amount was then compared to $23.17, the asset value per share which the trial court assumed a stockholder could have calculated from the land appraisals attached to the Offering Letter. The trial court then concluded:

> "* * * It is thus apparent that the value of a share of American Sumatra stock was, on June 28, 1960, the date of the offering letter, less than the value which a stockholder could have calculated a share to be worth from the material supplied to stockholders with that letter. Accordingly, plaintiffs have sustained no loss by the sale of their stock to Deli."

It was error, in our opinion, to dispose of the case in this manner. First, the trial court compared weighted factors with an unweighted factor. Secondly, the trial court compared a hypothetical going concern value based upon various elements of value with a represented liquidation value based upon asset value only. In so doing, the trial court compared incomparables. Although confronted with these problems on this appeal, the defendants have been unable to solve them.

As we have seen, the measure of damages is the difference between the price paid for the stock and its true value. It is necessary, therefore, that a determination of true value be made and compared with the price paid. This is the comparison that must be made, if liability is assumed or proved, before it can be said that the plaintiffs have suffered no loss or damage.

Accordingly, the judgment must be reversed and the cause remanded for further proceedings not inconsistent herewith.